NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARY PALAFOX, | : | |
| Plaintiff, | : | Civil Action No. 12-7895 (JAP) (DEA) |
| v. | : | **OPINION** |
| COUNTY OF WARREN, WARREN COUNTY COMMUNICATIONS CENTER, MARY DOE, TOWNSHIP OF BLAIRSTOWN, BLAIRSTOWN POLICE DEPARTMENT AND OFFICER KYLE DALRYMPLE, PATROLMAN "JOHN" FALCICCHIO AND JOHN JOHNSON, | : | |
| Defendants. | : | |

PISANO, District Judge.

This is a 42 U.S.C. § 1983 case brought by Plaintiff Mary Palafox ("Plaintiff" or "Palafox") against Defendants County of Warren, Warren County Communications Center, Gretchen Castner,[1] Township of Blairstown, Blairstown Police Department, and Officers Kyle Dalrymple, Nicholas Falcicchio, and Scott Johnson (collectively, the "Defendants"). Currently before the Court is a motion for summary judgment brought by Defendants Township of Blairstown, Blairstown Police Department, and Officers Kyle Dalrymple, Nicholas Falcicchio, and Scott Johnson (collectively, the "Blairstown Defendants") [ECF no. 7]. Also before the Court is a motion for summary judgment brought by Defendants County of Warren, Warren County Communications Center, and Gretchen Castner (collectively, the "Warren Defendants") [ECF No. 8]. Plaintiff opposes these motions [ECF No. 11]. The Court decides these matters

---

[1] The Amended Complaint added Gretchen Castner as a party to the case.

without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Court will grant both motions for summary judgment.

I.     **Background**

Plaintiff Mary Palafox[2] was arrested on January 16, 2010 by Blairstown Police Officer Kyle Dalrymple for driving under the influence. *See* Certification of Ian C. Doris, Esq. ("Doris Cert.") Ex. A. As a result of this arrest, her vehicle was towed by A-Tech Automotive and stored at their facility in Blairstown. *See* Ex. A. at 3. There is no dispute that this DUI arrest was legal and valid. *See* Mary Paulhamus-Palafox Deposition ("Palafox Dep.")14:17-15:25, at Doris Cert. Ex. B. Plaintiff was eventually transported to the Warren County Correction Center on an active warrant for failure to comply with a sentencing order from the Belvidere Court. *See* Ex. A; Palafox Dep. 17:2-19.

Plaintiff was bailed out by friends several hours later, and returned to her house between 1:00 and 2:00 a.m. on January 17, 2010. *See* Palafox Dep. 19:12-24, 20:6-9. When she returned home, Plaintiff could not find her wallet and called the Warren County Jail to inquire about it. She was advised that they did not have it but was told to call the Blairstown Police Department. *Id.* 22:10-20. Plaintiff then proceeded to call the Blairstown Police three times on their non-emergency number, at approximately 3:00 a.m., 8:00 a.m., and 11:00 a.m. She spoke to Defendant Gretchen Castner, a dispatcher with Warren County Communications, each time she called. *Id.* at 24:22-25:1; Deposition of Gretchen Castner ("Castner Dep.") 14:8-11, at Doris Cert. Ex. E. Castner, as the dispatcher, was able to see if a person was attempting to call the Blairstown Police Department, the Hopatcong Police Department, or 911 based on a screen in

---

[2] Plaintiff's maiden name was Mary Paulhamus. She married Javxer Vega Palafox in 1994, and thereafter abbreviated her name to Mary Paulhamus-Palafox. *See* Palafox Dep. 7:8-8:11.

front of her.  Accordingly, when Plaintiff called, Castner could see that she was calling its non-emergency line intending to speak to the Blairstown Police.  Castner Dep. 17:20-18:14.

When Plaintiff first spoke to Castner, she called on the non-emergency line and asked about her wallet, which she believed she had left at the Blairstown Police Station.  Castner told Plaintiff she would check with the Blairstown Police and see if it was there, and then either she or an officer would call her back.  Castner Dep. 14:15-23; Certification of George T. Daggett, Esq. ("Daggett Cert.") Ex. B.  Plaintiff identified herself as Mary Paulhamus-Palafox at this time.  Castner Dep. 16:6-7; Daggett Cert. Ex. B.  Castner then contacted the Blairstown Police, and an officer told her he would call Plaintiff with any information regarding the wallet.  Castner Dep. 16:15-16; *see* Daggett Cert. Ex. B.  Plaintiff later called back on the non-emergency line, regarding her impounded car.  Plaintiff once again identified herself as "Mary Paulhamus-Palafox."  Castner Dep. 18:18-20, 20:1-4; *see* Daggett Cert. Ex. B.  Plaintiff called the non-emergency number a third time, once again trying to gain access to her impounded car.  Castner recognized Plaintiff's voice, and Plaintiff also identified herself as "Mary Paulhamus-Palafox."  Castner Dep. 21-9-20.  In this third phone call, Plaintiff requested to have some of her groceries that were left in her now-impounded car released to her.  *Id.* at 22:2-7.  Plaintiff wanted to know if there was another phone number she could use to access A-Tech because she wanted to get to the groceries that she had in her car.  *See* Daggett Cert. Ex. B.  All three of these phone calls came from the same cell phone number.  Castner Dep. 25:7-13.

Eventually, Plaintiff spoke to Officer Johnson from the Blairstown Police Department.  She told him that she was looking for her wallet, and that she assumed it was in her vehicle.  Officer Johnson told Plaintiff that A-Tech was closed on Sunday and she therefore would not be able to get into her car until Monday.  *Id.* at 26:17-24. Thereafter, Plaintiff went to a diner with a

friend.  While there, she ran into another friend, Tom Farley, who knew the owners of A-Tech.  Farley attempted to make arrangements for Plaintiff to access her vehicle by reaching out to Pat Tanis, one of the owners of A-Tech.  Plaintiff and Farley eventually went to the A-Tech facility itself.  Meanwhile, Tanis contacted the Blairstown Police to report Plaintiff's efforts to gain access to her vehicle.  Officer Johnson called Plaintiff while she and Farley were at A-Tech, and told Plaintiff that he had already told her that A-Tech was closed and to wait until Monday, and informed her that charges were being brought against her.  *See* Palafox Dep. 31:18-33:17, 35:12-37:10; Deposition of Thomas Farley ("Farley Dep.") 7:16-9:2, at Doris Cert. Ex. D.

At around 1:15 in the afternoon, there was a 911 call that came in from a cell phone.  Castner Dep. 59:23.  The 911 call came from a different cell phone number than the three non-emergency calls.  *Id.* at 25:4, 25:16-18.  The call originated from a cell tower in Knowlton Township, which is a town that neighbors Blairstown.  *Id.* at 42:21-43:1.  The caller requested a phone number for the New Jersey State Police Hope Barracks.  Castner asked what or where the caller's emergency was.  The caller said that she did not have an emergency, but she needed the phone number for the State Police Hope Barracks because she needed to get her car back.  When Castner asked what the caller's name was, she hung up.  Castner then called the caller back to determine if there was a true emergency, pursuant to Warren Communication Center policy.  *Id.* at 31:9-20.  On Castner's second attempt to reach the caller, the caller picked up.  When Castner asked her where she was and what she needed, the woman said she was fine, and then hung up.  Castner called back a third time.  Castner spoke to a woman, who said that it was not an emergency and informed Castner that she got the information she needed from 411.  The woman identified herself as "Mary's friend," and that "Mary" was on the phone with the State Police.  Castner asked if that "Mary" was "Mary Paulhamus" and the woman responded that it was.

4

Castner then spoke to "Mary," who said she called 911 because she had no one else to call about getting her car back. Castner then called the Blairstown Police, and reported to them her belief that Plaintiff had made a non-emergency 911 call. *See* Daggett Cert. Ex. B; Castner Dep. 26:16-28:14. Castner believed that the same person called 911 as the three nonemergency calls because the voices sounded the same to her and because the person identified herself as "Mary." Castner Dep. 36:1-10.

After receiving the phone call from Castner, Officer Dalrymple reviewed the documents she faxed over from the Warren Communications Center. *See* Deposition of Kyle Dalrymple ("Dalrymple Dep.") 19:3-7, 20:11-12, at Doris Decl. Ex. I. He then listened to the recording of the 911 call. Dalrymple Dep. 19:17-19; Castner Dep. 29:23-30:23. Officer Dalrymple was familiar with Plaintiff's voice, because he had arrested her the night before and because he had spoken with her on the phone earlier. He believed that it was Plaintiff's voice on the recordings that were played for him. *See* Dalrymple Dep. 19:8-19. Officer Dalrymple made the decision to use a warrant because it seemed more appropriate than using a summons based upon her criminal history, such as the failure to appear and fugitive from justice charges. *Id.* at 35:16-21. It was up to the discretion of the judge to thereafter find probable cause and issue the warrant, and to determine the amount of bail. *Id.* at 34:16-35:10.

Officer Dalrymple then prepared an affidavit and contacted Judge Craig Dana via telephone. Judge Dana reviewed the affidavit and believed there was probable cause for the warrant. *Id.* at 20:11-16; Doris Decl. Ex. J. This affidavit also included information that came from Plaintiff's criminal history—specifically from information provided by the State of New Jersey Criminal History Records Bureau—that Judge Dana generally requested to be included on the affidavit. Dalrymple Dep. 24:7-12, 25:15-21, 26:7-17. Specifically, Judge Dana found

5

probable cause existed to charge Plaintiff with a violation of N.J.S.A. 2C:33-3(e), for placing a non-emergency call to 911. Judge Dana issued a warrant for Plaintiff's arrest. *See* Doris Decl. Ex. J; Dalrymple Dep. 28:11-22.

Officer Dalrymple and two other officers then went to effectuate the arrest. They could not get into one door, and had a dispatcher call the number that they had for Mary. Mary did not pick up the phone because she suspected that it was the Blairstown Police calling. *See* Palafox Dep. 44:7-18; Daggett Cert. Ex. B. The officers eventually got in contract with the landlord, who let the officers in so they could access Plaintiff's apartment. *See* Palafox Dep. 45:2-46:1. According to Plaintiff, the officers told the landlord "to step inside her apartment if she does not like the smell of mace, or if she is allergic to mace." Palafox Dep. 46:2-4. Officer Dalrymple, however, asserts that neither he nor the other officers carry mace. Dalrymple Dep. 34:2-5.

When the officers reached Plaintiff's door, they pounded on Plaintiff's door and instructed Plaintiff twice to come into the hallway. Plaintiff refused to comply both times. She then backed up and attempted to slam the door on Officers Johnson and Dalrymple. The officers gained access to Plaintiff's apartment, and twisted her around and cuffed her. Dalrymple Dep. 29:17-24; Palafox Dep. 53:4-56:4; Doris Decl. Ex. K. As a result of failing to cooperate with the police commands and for shutting the door on the police officers during the arrest, Plaintiff was charged with resisting arrest in violation of N.J.S.A. 2C:29-2. *See* Ex. K; Doris Decl. Ex. L.

On April 28, 2011, Plaintiff filed a complaint in the Superior Court of New Jersey, Warren County, Docket Number WRN-L-187-11. On or about December 13, 2012, Plaintiff filed a Second Amended Complaint. Although not a model of clarity, the Amended Complaint appears to allege a Section 1983 claim for false arrest and a Section 1983 claim for malicious prosecution arising out of Plaintiff's January 17, 2011 arrest, and state law claims relating to her

6

arrest.  Thereafter, Defendants removed the action to this Court on December 28, 2012.  On July 19, 2013, the Blairstown Defendants filed a motion for summary judgment.  Warren Defendants filed a motion for summary judgment on July 26, 2013, joining the Blairstown Defendants' Motion in entirety.  Plaintiff opposes[3] these motions, arguing that there are material facts in dispute that prevent summary judgment from being entered.

## II.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The substantive law identifies which facts are material.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.  While the moving party bears the initial burden of showing the absence of a genuine issue of

---

[3] Under Local Rule 56.1(a), a party opposing summary judgment must provide "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion" in its opposition brief.  L. Civ. R. 56.1(a).  "[A]ny material fact not disputed shall be deemed undisputed for purposes of summary judgment motion."  *Id.*  Plaintiff has failed to provide such a responsive statement of material facts or to address each paragraph of either Defendants' statement of undisputed facts, as required by Rule 56.1(a).  As such, Plaintiff has failed to dispute either the Blairstown Defendants' or the Warren Defendants' Statement of Material Facts and the Court accepts as true all of the facts set forth in both Defendants' Statement of Undisputed Material Facts and attached exhibits.

7

material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Further, the non-moving party cannot rely on speculation or conclusory allegations to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.    Legal Discussion**

    **A.    Violation of a Constitutional Right**

Section 1983 provides a private right of action against anyone who, acting under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988). In order to establish a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 49 (citations omitted). In her Amended Complaint, Plaintiff alleges Defendants falsely arrested her and maliciously prosecuted her in violation of the Fourth and Fourteenth Amendment. Defendants argue that probable cause existed for both the arrest and prosecution of Plaintiff, thereby barring her claims. The Court will address these arguments below.

1.      Probable Cause for the Arrest

To establish a claim of false arrest under 42 U.S.C. § 1983, a plaintiff must show that the police lacked probable cause for the arrest. *See Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Probable cause to arrest "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested*.*" *Orsatti v. New Jersey*, 71 F.3d 480, 483 (3d Cir. 1995).  Probable cause demands more than "mere suspicion; however, it does not require . . . evidence sufficient to prove guilt beyond a reasonable doubt." *Id.* at 482-83 (citing *United States v. Glasser*, 750 F.2d 1197, 1205 (3d. Cir. 1984)); *see Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (holding probable cause requires only a "fair probability" that a person committed the relevant crime).  The validity of the arrest is not dependent on whether the suspect actually committed the crime; rather, what matters is whether, when considering the totality of the circumstances at the time of the arrest, "the objective facts available to the officers . . . were sufficient to justify a reasonable belief that an offense was being committed." *Glasser*, 750 F.2d at 1206 (citing *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).

Here, Plaintiff acknowledges that she was arrested with a warrant, but argues that the warrant was not supported by probable cause. Opp. Br. at 8.  Plaintiff was arrested for a violating N.J.S.A. 2C:33-3(e), which prohibits a person from "knowingly places a call to a 9-1-1 emergency telephone system without purpose of reporting the need for 9-1-1 service."  In this case, neither side disputes that the caller who called 911 requesting the phone number for the New Jersey State Police Hope Barracks was violating this statute.  Therefore, this Court must consider the totality of circumstances at the time of Plaintiff's arrest to determine if Office Dalrymple had probable cause to believe it was Plaintiff who was the 911 caller.

9

Here, the Court finds probable cause did exist to arrest Plaintiff. Considering both the many similarities between the content and theme of the 911 call and Plaintiff's non-emergency phone calls, as well as the surrounding circumstances in which Plaintiff was continuously trying to access her car, it was certainly reasonable to believe that Plaintiff was the 911 caller. Defendant Castner spoke to Plaintiff three times on the phone. Each of these phone calls involved contacting the police regarding her wallet or her impounded car. At the same time, as the Blairstown Police were aware, Plaintiff was trying to gain access to her car by having a friend contact A-Tech's owners and going to the A-Tech facility. The 911 caller, like Plaintiff, was a female who was anxiously trying to access an impounded car. While it is true that the 911 caller called from a different phone number than Plaintiff's non-emergency calls, the 911 caller was undisputedly using her friend's phone. Significantly, both the caller and her friend answered Castner in the affirmative when asked if the caller's name was "Mary;" further, the caller's friend answered Castner affirmatively when she asked if the caller was specifically "Mary Paulhamus." Defendant Castner contacted the Blairstown Police because she believed that the caller was Plaintiff. Thereafter, Officer Dalrymple reviewed the documents from the Warren Communications Center and listened to this 911 tape. He was familiar with Plaintiff's voice from his interactions with her, and believed the caller to be Plaintiff. Officer Dalrymple was also aware that Plaintiff had been attempting to access her car throughout the morning, including by calling the Blairstown Police Department. These undisputed facts clearly establish that a "fair probability" existed for Officer Dalrymple to believe the 911 caller was Plaintiff when considering the facts and circumstances within his knowledge. Therefore, probable cause existed for Officer Dalrymple to believe that Plaintiff had called 911 on a non-emergency matter.

Plaintiff furthers another argument against a finding of probable cause. Specifically, Plaintiff argues that Defendants "demonstrated an animus towards Plaintiff" and were "motivated not by a consideration of probable cause but they were annoyed by Plaintiff's requests for help."[4] Opp. Br. at 6, 7. As an initial matter, these assertions are nothing more than speculation, and are wholly unsupported by the record. However, even if these assertions were supported by the record, it is well-established that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

In light of these facts, the only way that Plaintiff can succeed is if she submits evidence that Office Dalrymple recklessly disregarded the truth in his warrant application, and that a warrant application based on what Officer Dalrymple should have told the judge would have lacked probable cause. *See Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). After all, an arrest warrant "does not, in itself, shelter an officer from liability for false arrest." *Id.* In order to establish a lack of probable cause when an arrest is made pursuant to a warrant, a plaintiff must prove "by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Eckman v. Lancaster City*, 529 F. App'x. 185, 186 (3d Cir. 2013) (quoting *Wilson*, 212 F.3d at 786-87).

---

[4] Likewise, Plaintiff has alleged in Count Seven that Defendant Castner "deliberately lied to the Blairstown Police indicating to them that she had confirmed that Plaintiff Mary Palafox was the person calling on the 911 line." In her brief, Plaintiff seems to argue that this assertion is supported by Defendant Castner's statement to the Blairstown Police that she was "sick of [Plaintiff]." As explained above, even if Defendant Caster was subjectively annoyed with Plaintiff, this does not change the objective analysis for the existence of probable cause. *See Devenpeck*, 543 U.S. at 153. The record has established that Castner believed the 911 caller, and this belief is reasonable based upon both her familiarity with Plaintiff's voice and her prior conversations with Plaintiff, during which Plaintiff was trying to gain access to her impounded car. Furthermore, Officer Dalrymple conducted an investigation into the matter, and reviewed the documents and listened to the 911 tape and found probable cause existed. It was Officer Dalrymple who made the decision to charge Plaintiff, not Castner.

11

Here, Plaintiff has asserted that Defendant Dalrymple "falsified the Affidavit of Probable Cause" in an attempt to incarcerate Plaintiff. Opp. Br. at 6-7. A review of Officer Dalrymple's Affidavit in Support of Probable Cause, however, reveals no factual inconsistencies regarding what happened. *See* Ex. I. Furthermore, the information that Plaintiff argues was omitted, such as the fact that the 911 caller was seeking to get in contact with the State Police, would not affect the finding of probable cause by a judicial officer for reasons just discussed. Plaintiff further argues that Officer Dalrymple purposefully fabricated the affidavit because he "include[d] a conviction for being a fugitive from justice." Opp. Br. at 6, 10. The affidavit, however, states that Plaintiff "has prior criminal history, failure to appear, and has been a fugitive of justice in NJ." Ex. I. Plaintiff's criminal history indicates that she was charged as a fugitive from justice arising out of an earlier charge from the Blairstown Municipal Court. *See* Daggett Cert. Ex. A. Officer Dalrymple's statement in his affidavit, therefore, is not false. Contrary to Plaintiff's argument, Officer Dalrymple did not misrepresent Plaintiff's criminal history, and never stated that Plaintiff was convicted of being a fugitive of justice. *See* Ex. I. Further, besides Plaintiff's bare allegation that this was a purposeful fabrication on behalf of Office Dalrymple, Plaintiff has provided no evidence to support this allegation, nor does the record itself bear it out. Consequently, because Plaintiff has failed to show that the affidavit contains any sort of defect, probable cause existed to arrest Plaintiff for calling 911 on a non-emergency basis.

Overall, the record is clear that probable cause existed to believe that Plaintiff had called 911 in violation of N.J.S.A. 2C:33-3(e).[5] Therefore, Plaintiff's claims for false arrest in violation

---

[5] Although the Amended Complaint only alleges false arrest in violation of Plaintiff's Fourth and Fourteenth Amendment rights with regards to the violation of N.J.S.A. 2C:33-3(e), probable cause also existed to charge Plaintiff for resisting arrest in violation of N.J.S.A. 2C:29-2(a)(1). Under N.J.S.A. 29:2C:29-29(a)(1), "a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." Here, it is undisputed that Plaintiff knew she was going to be arrested and admitted that she did not comply when the Blairstown Officers twice instructed her to enter the hallway. Palafox Dep. 53:6-56:2. According to the police report and in the Blairstown Defendants' Statement of Material Facts, which Plaintiff has

12

of the Fourth and Fourteenth Amendment must fail, and summary judgment will be granted for Defendants on Count Seven.

### 2. Malicious Prosecution

Plaintiff has also brought a claim for malicious prosecution under Section 1983 against the Defendants Dalyrmple, Falcicchio, Johnson (hereinafter, the "Officer Defendants") in Count Eight of her Amended Complaint. In order to prevail on a claim for malicious prosecution under Section 1983, a party must prove that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*McKenna v. City of Phil.*, 528 F.3d 447, 461 (3d Cir. 2009). As indicated, a claim of malicious prosecution requires a showing that the proceeding was initiated without probable cause. *See id.* Because probable cause existed to charge Plaintiff with a violation of N.J.S.A. 2C:33-3(e),[6] the Officer Defendants are entitled to summary judgment on her claim of malicious prosecution in violation of the Fourth and Fourteenth Amendment under Count Eight as well.

### B. Qualified Immunity

Defendants have also argued that Defendants Dalyrmple, Falcicchio, Johnson, and Castner are entitled to qualified immunity on Plaintiff's claims for false arrest and malicious prosecution. Because this Court has held that probable cause existed for Plaintiff's arrest, it need not address this issue; however, it is clear that Defendants are entitled to qualified immunity.

---

not disputed, Plaintiff also tried to close her door on the officers to prevent them from effectuating the arrest. These attempts by Plaintiff to prevent the officers from arresting her clearly creates probable cause to charge Plaintiff with resisting arrest.

[6] Once again, as discussed, although not outright alleged in Count Eight, there was also probable cause to charge Plaintiff with a violation of N.J.S.A. 2C:29-2(a)(1).

13

Qualified immunity protects government officials from liability for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Therefore, qualified immunity shields those officers who reasonably, but mistakenly, believe that their actions were lawful while permitting a plaintiff to recover against those officers that knowingly violate a plaintiff's rights. *See Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007). When assessing whether qualified immunity applies, courts undertake a two-step inquiry: (1) whether the defendant's conduct violated the plaintiff's statutory or constitutional rights; and (2) whether the right or rights in question were clearly established at the time of the violation. *Schneyder v. Smith*, 653 F.3d 313, 318 (3d Cir. 2011). "If the answer to either question is 'no,' the analysis may end there." *Matos v. City of Camden*, No. 06-205, 2009 U.S. Dist. LEXIS 21675, at *11 (D.N.J. Mar. 18, 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 245 (2009)).

Here, Plaintiff simply fails to make out a false arrest or malicious prosecution claim because probable cause existed to arrest Plaintiff. Given that Plaintiff cannot establish on the record before the Court that her Fourth Amendment guarantee against false arrest or malicious prosecution was violated, the Court need not proceed to the second inquiry under the qualified immunity analysis. *See Matos*, 2009 U.S. Dist. LEXIS 21675, at *11. Therefore, Defendants are also entitled to qualified immunity.

      C.    **Section 1983 Claims against the Public Entity Defendants**

In her Amended Complaint, Plaintiff has named Warren County, the Warren County Communications Center, the Township of Blairstown, and the Blairstown Police Department (the "Public Entity Defendants") as parties. Plaintiff's Amended Complaint, however, is void of any express allegations or claims against the Public Entity Defendants. To the extent that such

14

allegations can be inferred, these allegations also fail to establish any claim against the Public Entity Defendants.

The language of Section 1983 "plainly imposes liability on a government that . . .'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). Here, Plaintiff's constitutional rights were not violated. For that reason alone, any possible allegation against the Public Entity Defendants would fail. Further, it is well-established that a local government cannot be sued under § 1983 on a theory of *respondeat superior*. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Here, Plaintiff has failed to present any evidence or facts in the record to support even an inference of the existence of an official policy of custom by the Public Entity Defendants that violated Plaintiff's constitutional rights. Therefore, any possible claims against the Public Entity Defendants are meritless, and summary judgment will be entered in their favor.

### D.    State Law Claims

Next, with respect to Plaintiff's various state law claims of negligence, false arrest, and malicious prosecution, Defendants move for summary judgment on the basis of good faith immunity under New Jersey's Tort Claims Act, N.J.S.A. 59:3-3. The New Jersey Tort Claims Act, N.J.S.A. 59:1, *et seq*. ("NJTCA"), provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. In order to obtain the benefit of immunity under the NJTCA, a public employee must demonstrate either that he acted with objective reasonableness or establish that he acted with subjective good faith. *Alston v. City of Camden*, 168 N.J. 170, 186 (2001) (citing *Fielder v. Stonack*, 141 N.J. 101, 131 (1995)).

15

Significantly, "[t]he 'objective reasonableness' standard that is used to determine whether a defendant enjoys qualified immunity from actions brought pursuant to 42 U.S.C. § 1983 is used to determine questions of good faith arising under N.J.S.A. 59:3-3." *Hill v. Algor*, 85 F.Supp.2d 391, 411 (D.N.J. 2000) (citing *Lear v. Township of Piscataway*, 236 N.J. Super. 550, 553 (App. Div. 1989)). Here, because the Court has already determined that the Officer Defendants and Castner enjoy qualified immunity under § 1983, these Defendants are immune from liability as to Plaintiff's state law claims under the NJTCA as well, and summary judgment is granted in favor of Defendants.

Further, even if the Officer Defendants did not have good faith immunity, Plaintiff's state law claims against all the Defendants would be barred under the NJTCA because Plaintiff has failed to meet the notice requirements of the Act. *See Velez v. City of Jersey City*, 180 N.J. 284, 290 (2004). The NJTCA sets forth a procedural framework for making claims against public entities and public employees. *See* N.J.S.A. 59:8-1, *et seq.* The filing of a notice of claim is a prerequisite to maintaining a suit against a public entity or a public employee. *See* N.J.S.A. 59:8-3. The NJTCA establishes precise time limitations within which a claim may be brought against public entities and employees. N.J.S.A. 59:8-8. By its own terms, the statute requires that a notice of claim be presented no later than ninety days after the accrual of the cause of action; a failure to file the claim within ninety days will cause the claimant to be "forever barred from recovering against a public entity or public employee." N.J.S.A. 59:8-8. Thus, a failure to comply with the NJTCA's notice of claim provisions will lead to the dismissal of a claim. *See Davis v. Twp. of Paulsboro*, 371 F. Supp. 2d 611, 621 (D.N.J. 2005).

Here, it is undisputed that Plaintiff was arrested on January 17, 2010. This is the date under which the cause of action for Plaintiff's tort claims accrued under the NJTCA. Therefore,

Plaintiff's time limit to file a Tort Claims Notice was up to and including April 17, 2010. It is also undisputed that Plaintiff's Tort Claims Notice was not filed under May 25, 2010. Plaintiff, therefore, failed to file her claim within ninety days, thereby barring her from recovering from Defendants for any of the asserted torts alleged in this case. *See* N.J.S.A. 59:8-8; *Davis*, 371 F. Supp. 2d at 621.

Therefore, because Plaintiff's state law claims are barred by both a failure to comply with the NJTCA notice requirements and because the individual Defendants are entitled to good faith immunity, summary judgment will be granted for Defendants on Counts One through Six.

**IV.**     **Conclusion**

For the foregoing reasons, the Blairstown Defendants' and the Warren Defendants' Motions for Summary Judgment will be granted. An appropriate Order follows.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  February 21, 2014

17